Peter VARDILOS, Appellant,

v.

Violet REID, Appellee.

No. 13354.

Court of Civil Appeals of Texas.

Houston.

Jan. 8, 1959.

Rehearing Denied Jan. 29, 1959.

Red, Kemp & Fahey, Pat N. Fahey, Houston, for appellant.

Funderburk & Murray, John Murray, Houston, for appellee.

BELL, Chief Justice.

The appellee recovered judgment against appellant in the amount of $221.28. This represented the amount of damages which the jury found was done to the automobile of appellee in a collision that occurred between her car and that of appellant. Appellant by way of a cross-action had sought to recover for the damages sustained by his car in the collision. The jury, however, found appellee guilty of no act of negligence and found appellant guilty of the negligent acts hereinafter mentioned.

The collision occurred January 21, 1958, in the City of Houston, at the intersection of Yoakum Boulevard and Bartlett Street. The jury found that appellant failed to keep a proper lookout; that he drove his automobile at an excessive rate of speed under the circumstances; that he failed to timely apply the brakes on his vehicle; and,

that he failed to yield the right-of-way to appellee, whose vehicle had entered the intersection first. These negligent acts were each found to be a proximate cause of the collision.

Appellant complains here that there is error in the action of the trial court in rendering judgment for appellee in the following respects:

1. The answer of the jury to Special Issue No. 1, inquiring as to whether appellant kept a proper lookout, is unsupported by the evidence.

2. The answer of the jury to Special Issue No. 3, inquiring as to whether appellant drove his vehicle at an excessive rate of speed under the circumstances, is not supported by the evidence.

3. The answer of the jury to Special Issue No. 5, inquiring as to whether appellant timely applied his brakes, is not supported by the evidence.

4. The court erred in admitting in evidence appellee's Exhibits 2, 3 and 4, they allegedly being pictures of appellee's automobile in its damaged condition, the objection to such testimony being that the pictures had not been sufficiently proven to be those of appellee's automobile.

5. The form of Special Issue No. 5 is said to be such as to constitute a comment on the weight of the evidence.

6. The instruction given in connection with Special Issue No. 8 is said to be a comment on the weight of the evidence.

7. It is asserted generally with regard to the whole case that the court erred in rendering judgment against appellant on both appellant's cross-action and appellee's action because the overwhelming weight and preponderance of the evidence was in favor of appellant and against appellee.

8. The court erred in admitting in evidence appellee's Exhibit No. 1 because it was not properly proved up. This exhibit was the sheet showing cost of repairs.

9. The court erred in overruling appellant's objection to these questions by appellee's counsel:

"You wouldn't want this jury not to be able to see what happened? Do you?"

It is asserted the questions are argumentative.

■ The Point asserting that the form of Special Issue No. 5 constitutes a comment on the weight of the evidence is not briefed. The Issue reads:

"Do you find from a preponderance of the evidence that Peter Vardilos failed to apply his brakes at a time that a person of ordinary prudence in the exercise of ordinary care acting under the same or similar circumstances would have applied his brakes?"

The evidence showed that the brakes were apparently applied approximately 12 feet from the intersection. At least, there were 12 feet of skid marks back of the appellant's vehicle and the front of his vehicle was 10 feet in the intersection. The Issue was not subject to the objection urged.

■ The Point asserting that the instruction given in connection with Special Issue No. 8 is overruled. The record fails to show that there was any such objection made to the court's charge. Any error there might have been in the instruction was therefore waived. Rule 274, Texas Rules of Civil Procedure.

It is necessary for us to review the testimony in order to appraise the other Points of Error.

Miss Reid testified she was driving her automobile south on Yoakum. She had been on this street for only a block prior to the collision. She was driving about 15 or 20 miles an hour. She lived in the block just beyond the point of the collision. When she reached a point about a car length and a half north of the intersection of Yoakum with Bartlett, she saw appellant's vehicle about 4 car lengths or one-

third of a block from the intersection. It was proceeding east on Bartlett at a speed of 5 or 10 miles per hour. The streets were dry. The weather was fair. Yoakum and Bartlett are both wide enough to accommodate 3 cars abreast. There were some cars parked on Yoakum so she was driving in the center lane. There were also some cars parked on Bartlett Street about half way back west toward Mt. Vernon. The appellant, when she first saw him, seemed in no hurry. She proceeded into the intersection and was three-fourths through it when appellant's car hit her car at the right rear fender. She definitely entered the intersection before appellant. Just before the collision she saw appellant out of the corner of her eye and he seemed to be coming pretty fast. She never put on the brakes of her vehicle. She never accelerated her car. When she was a car length and a half from the intersection she could see a block west on Bartlett. There was a thin hedge on the northwest of the intersection but it ended some distance back from the north curb of Bartlett. There is also a house, but it is set back from Bartlett.

Appellee's Exhibits 2, 3 and 4 are pictures that look like her car. She did not take the pictures. They show damage to the right rear fender like the damage on her car.

Mr. Vardilos, the appellant, testified the collision occurred about 5:15 in the afternoon. He was travelling east on Bartlett about 25 or 26 miles per hour. *He usually drove a little slower, but he was in a hurry. He had an appointment in Pasadena. He usually went a lot slower because he knew those streets were dangerous.* Before he commenced his journey, his car had been parked on Bartlett immediately west of Mt. Vernon which is the first street west of and parallel to Yoakum. He was driving in the center lane. When he was about a car length and a half from the corner of Bartlett and Yoakum he saw appellee. Appellee, from the look in her eye, seemed real excited. He put on his brakes and

skidded his car wheels. His car hit the right rear of her car. The point of collision was just a little south of the center of the intersection. At the northwest corner of the intersection is a house, so from the center lane on Bartlett you could not see north of Yoakum more than two car lengths. *It is a very bad corner.* As he approached the intersection he looked first to his left and then to his right. He saw Miss Reid's car and immediately applied his brakes. Her car was going a little bit faster than his. The cars entered the intersection about the same time. When he first saw her she was a car length back from the intersection.

Mr. Little, a police officer who went to the scene of the collision and investigated, testified appellant's car hit the right rear side of appellee's car. Appellant's car was 10 feet into the intersection and had 12 feet of skid marks behind his car. Appellee's car at the point of impact (the rear right fender) was 14 feet into the intersection. Bartlett Street is 26 feet wide and Yoakum is 25 feet wide.

This, we feel, is a fair summary of the testimony relevant to the matters before us for review.

 We find there is evidence supporting the jury's finding that appellant failed to keep a proper lookout. In determining this issue we must consider the testimony and legitimate inferences to be drawn therefrom in the light most favorable to the verdict and disregard that which is to the contrary.

Appellant testified he did not see appellee until she was about a car length and a half from the intersection and he was back about the same distance. Appellee says, however, that when she was a car length and a half from the intersection she saw appellant who was about four car lengths from the intersection, or one-third of a block away. Under appellee's testimony appellant, had he been keeping a lookout, could have seen appellee when he was at least four car lengths away instead of a

car length and a half. Too, appellant testified he was in a hurry because he had an appointment in Pasadena. The jury could have well concluded he did not look because his mind was preoccupied with his appointment. He did testify he looked both to his right and then to his left and when he looked to his left he saw appellee a car length and a half from the intersection, and then applied his brakes. Had he looked when he was farther back he could have seen appellee and could have stopped short of the intersection. Too, the jury could well conclude that since the corner was known to appellant to be dangerous he should properly have looked sooner than he himself says he did.

■ We likewise find there is evidence to support the jury's finding that appellant was driving at an excessive rate of speed under the circumstances. The appellant testified he was driving 25 or 26 miles an hour; that this was a lot faster than he usually drove at this corner which was a dangerous corner; that he was driving faster than usual because he was in a hurry to get to an appointment he had in Pasadena.

■ The fact that he was driving below the speed limit of 30 miles per hour is not material. Though appellant may have been violating no penal ordinance or statute, this does not relieve him of the common law duty to operate his vehicle at a speed at which an ordinarily prudent person in the exercise of ordinary care would operate a vehicle under the same or similar circumstances.

■ There is evidence to support the finding that appellant failed to timely apply his brakes. The evidence shows he applied his brakes so as to leave marks of 12 feet. He was in the intersection 10 feet and had skid marks 12 feet back of his car. Appellant says he discovered appellee when he was a car length and a half from the intersection. His car was about 18 feet long. This would mean at the time he discovered appellee he was 27 feet from the intersection. Add to this 27 feet the 10 feet in the intersection to the point of collision and there was a distance of 37 feet. This left a distance of 15 feet the car travelled after appellant says he discovered appellee before he applied his brakes. Grant that there would be some reaction time before appellant could apply his brakes, the jury could conclude he should have applied the brakes sooner than he did. Had he done so appellee might have cleared the path of appellant's car. The damage caused by the impact was to the middle of the rear right fender.

■ While appellant in his brief apparently contends that though there is evidence to support the jury's answers to Special Issues 7, 8 and 9, which deal with whether appellee entered the intersection first; whether appellant failed to yield the right of way, and whether this failure was a proximate cause of the collision, nevertheless the answers are contrary to the overwhelming weight and preponderance of the evidence.

We cannot consider this as appellant has made no Points of Error in this regard.

■ It was not improper to admit appellee's Exhibits 2, 3 and 4, showing damage to the right rear fender to a car that appellee said was hers, basing such conclusion on the nature, extent and position of the damage. She did not take this picture and did not know who took it. To make the pictures admissible this is not necessary; it is only necessary that the pictures correctly portray the damage to her car. In any event, the admission of the pictures could not possibly have resulted in harm to appellant. All parties had testified that the point of collision was the right rear fender of appellee's car. This is what the pictures showed.

■ Appellant does not brief his Point asserting that appellee's Exhibit No. 1 was improperly admitted because not properly proved up. We have read the record and

find that C. B. Strode, the body-shop man for Jimmie Green Chevrolet, testified as to the repairs done on Miss Reid's automobile and testified to this exhibit as being the estimate made. We overrule appellant's complaint.

■ Appellant says the court committed error in overruling his objection to the questions of appellee's counsel propounded to appellant, reading as follows:

"You wouldn't want this jury not to be able to see what happened? Do you?"

This was asked in connection with the introduction in evidence of pictures taken of appellant's automobile. Appellant had complained that they were taken without his permission. We fail to see any error in the action of the court.

The judgment of the trial court is affirmed.

On Appellant's Motion for Rehearing.

Appellant has filed this motion for rehearing urging we reconsider our action in affirming the judgment of the trial court. In this motion he points out that in our opinion we stated Point Eight had not been briefed when it had been briefed in a Supplemental Brief filed with the Court.

Point Eight asserts that the trial court erred in admitting in evidence Plaintiff's Exhibit No. 1 over the objection it had not been properly proven up. Exhibit No. 1 is a statement of the cost of repairs to appellee's automobile.

Apparently the theory of appellant is that the Exhibit was not properly proven because it is a statement of the cost of repairs and the test is the reasonable cost of making the repairs made necessary by the damage caused in the collision so long as the repairs do not enhance the value of the vehicle. There was, he says, not sufficient evidence to show the repairs were reasonable and necessary and that they did not enhance the value of the car.

■ The measure of damage in a case of this kind is the difference in the market value of the vehicle immediately before the accident and immediately thereafter, or, the reasonable cost of making repairs necessary to repair the damage so long as such does not increase the market value.

We have reviewed the testimony and find that the man who made the estimate recorded his figures on Exhibit No. 1. The witness testified that on inspection of the car he found damage to the right rear and a bent left axle and the braking back plates. The damage on the right side was to the fender, right rear quarter panel and the door. The witness also testified the damage he noticed was fresh. He testified the charges he made were the reasonable prices charged in Houston at the time they were made. He testified the car was no more valuable after the repairs than before they were made.

The appellee testified there was no damage to these parts of her automobile before the collision.

Appellant says, however, this does not show the condition of the car "immediately" before or after the collision.

■ We are unable to agree with appellant. We think the evidence was sufficient to prove up Exhibit No. 1 as reflecting the reasonable and necessary costs of making the repairs so as to put the car in as good a condition as it was in prior to the collision. Too, we think the testimony shows when the witness was talking about enhanced value he was referring to the fact that "immediately" after the repairs the car was not worth more than it was immediately before the collision in its undamaged condition.

Appellant's motion for rehearing is overruled.