**UNITED STATES of America, Appellee,**

v.

**Herbert Allen MURRAY, Appellant.**

**No. 75–1169.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Oct. 2, 1975.

Rehearing Denied Nov. 11, 1975.

---

Douglas J. Patterson, Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Herbert Allen Murray has taken a timely appeal from his conviction by a jury on charges of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2 and the resulting sentence of twenty years. Charles Thompson, a codefendant, has not appealed his conviction on similar charges.

Murray asserts that the trial court erred: (1) in failing to sustain objections to the use of bank surveillance photographs by Sharon Orr to identify Murray during the trial when she could not make a definite in-court identification of Murray before reviewing these photographs; (2) in requiring Murray to appear before Orr and the jury in a wig; and (3) in denying Murray's motion for acquittal or for a new trial. We affirm.

On August 15, 1974, at approximately 10:00 A.M., two men entered the Mid-Town Branch of the Home Savings Association in Kansas City, Missouri. Upon reaching the window of Sharon Orr, a teller at the bank, they handed her a paper bag and demanded, at gunpoint, that she place the bank's money in it. As she reached for the money, she tripped the surveillance camera which photographed the remainder of the robbery. Clarence Hale, a customer of the bank, also witnessed the incident.

On the basis of the surveillance photographs, Murray was arrested on September 8, 1974. He was wearing a wig at the time of his arrest.

At trial, Orr identified Charles Thompson as one of the participants in the robbery but she could not initially make a positive identification of Murray. Over objection, she was allowed to review photographs which she identified as surveillance photographs that accurately depicted the scene at the bank during the robbery of August 15, 1974. Murray was then instructed, over objection, to place a wig on his head. Orr then testified: "It looks like him. I thought he might have been a little heavier, was all." On cross-examination, she further stated:

All right. After looking at the photographs, as I said it happened quite a while now, and looking at him with the wig, without the wig he does look very much different, with the wig on, yes.

\*      \*      \*      \*      \*      \*

Yes, he looks like the man.

Hale positively identified Thompson, but he could not positively identify Murray as he sat in the courtroom or when wearing the wig.

█ Murray's principal argument is that after Orr was initially unable to make a positive identification of him, it was prejudicial error to allow her to view the surveillance photographs of the robbery while on the witness stand and to utilize them to make a positive in-court identification of Murray. He suggests that this procedure is unduly and unnecessarily suggestive and is conducive to irreparable mistaken identification in violation of the standards set forth in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and as applied in *United States ex rel. Choice v. Brierley,* 460 F.2d 68 (3rd Cir. 1972) and *United States v. Zeiler,* 447 F.2d 993 (3rd Cir. 1971).

We start with the premise that a sufficient foundation was laid for the introduction of these photographs into evidence by the testimony of Orr that they accurately reflected the robbery that took place at the Mid-Town Branch of the Home Savings Association on August 15, 1974. *United States v. Wilkins,* 477 F.2d 323 (8th Cir.), *cert. denied,* 414 U.S. 843, 94 S.Ct. 103, 38 L.Ed.2d 81 (1973); *Mikus v. United States,* 433 F.2d 719 (2nd Cir. 1970); *United States v. Hobbs,* 403 F.2d 977 (6th Cir. 1968). This being the case, the jury was free to determine, on the basis of the photographs, whether Murray was one of the men who had been photographed participating in the robbery. While there is some ambivalence in the record, it appears that the trial court permitted Orr to use the photographs in identifying Murray. Later, the trial court expressed the view that a

lay witness should not be permitted to give an opinion as to whether an individual in a photograph was or was not one of the defendants. It reasoned that to permit a lay witness to express such an opinion would invade the province of the jury. It stated, however, that it would be proper to ask a witness who knew the defendant whether the individual in the photograph had the characteristics, the facial features or the dress of the person on trial. Thus, it may have been inconsistent for the trial court to have permitted Orr to testify in the precise fashion that she did.[1] We need not determine whether it was error for the court to have done so because, in our view, the conviction was unaffected by the error, if any. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

The record shows:

(1) Murray conceded to an FBI agent, shortly after his arrest and after he had been given required warnings, that one of the persons photographed at the scene of the robbery looked exactly like him.

(2) A witness, who was a close acquaintance and traveling companion of Murray, testified that the person in the photographs had the same physical characteristics, dress and appearance as Murray, and that he had seen Murray wearing trousers similar to those being worn by one of the men in the photographs.

(3) The jury had the photographs taken at the scene of the robbery before it, and had an opportunity to view Murray with and without the wig and to make its own determination as to whether Murray participated in the robbery.

In the light of these facts, Orr's very tentative identification was not likely to have been significant in the jury's verdict.[2]

---

1. Federal Rules of Evidence 701, 704, which became effective on July 1, 1975, *see* Pub.L. No. 93–595 (January 2, 1975), would permit a lay witness, who has been shown to be familiar with a person, to testify that, in his opinion, the person photographed and the defendant are one and the same.

2. *Compare, United States v. Barber,* 442 F.2d 517 (3rd Cir.), *cert. denied,* 404 U.S. 846, 92 S.Ct. 148, 30 L.Ed.2d 83 (1971); *United States v. Hobbs,* 403 F.2d 977 (6th Cir. 1968); *United States v. Kelley,* 334 F.Supp. 435 (S.D.N.Y. 1971), *aff'd,* 471 F.2d 647 (2nd Cir. 1973).

492

Murray also asserts that the trial court erred in requiring him to wear a wig before the jury similar in style to an Afro wig which he had in his possession when he was arrested and similar to the hair style of Thompson at the time of the theft. We find no error. The trial court properly required the defendant to place the wig on his head to assist the jury in determining whether he was in fact the person who had been photographed participating in the robbery. *United States v. Turner,* 472 F.2d 958 (4th Cir. 1973).

We also find that the trial court did not err in denying the motion for acquittal or a new trial. Whether there was sufficient evidence turned largely on the question as to whether Murray was one of the men who was photographed participating in the robbery. As set forth above, we find that there was ample evidence in this record from which the jury could determine that he was.

We affirm.